JOHN W. PEARSON, APPELLANT, VS. JOSEPH GRICE, AP-
PELLEE.

1. A charge is not proper for detention of a vessel to take on board freight where the charter party provided for its being taken free.

2. Where there is a confused statement in the bill of exceptions as to the rejection of material and important evidence, leaving it in doubt whether the same was actually rejected, the Court will award a new trial.

3. The rule for the calculation of interest in Dorman and Hart, 2 Florida, 448, held inapplicable to accounts, with mutual credits, between merchant and merchant.

4. In case of the Circuit Judge not remembering as to the admission of evidence about which there is doubt, means should be taken to ascertain the truth, if practicable, by examination of witnesses or other appropriate mode.

5. The Court will not receive the transcript of a record badly made out, with interlineations, but will require a new and complete record.

This case was decided at Jacksonville.

This was an action of assumpsit, instituted by Joseph Grice, a commission merchant in New York, against John W. Pearson to recover the balance of an account claimed to be due for commissions, advances and interest thereon in the purchase of merchandize, sale of lumber and chartering of vessels.

Annexed to the declaration is a bill of particulars dated 19th March, 1853, embracing amounts advanced for merchandize purchased and interest thereon from date of purchase, amounts advanced on drafts of defendant, with interest on each item, commissions at $2\frac{1}{2}$ per cent. for accepting and advancing, and including an item of $31 as cash paid for the detention of the schooner Cherokee. The defendant Pearson is credited in this account with amount sales of lumber at different times and interest on the

amount of each sale, leaving a balance claimed to be due the plaintiff of $2,985 13.

The defendant pleaded non-assumpsit, and set-off for lumber sold and delivered to the plaintiff.

The plaintiff's counsel read in evidence sundry invoices and bills of lading of goods purchased for defendant, and also a letter of defendant, dated 12th December, 1850, directing plaintiff to send him a vessel to load with live oak and cedar on the St. Johns river, and also requesting that sundry articles of merchandize specified, be sent to him. The plaintiff's counsel also read in evidence sundry drafts drawn on him by the defendant; also the charter party of the schooner Cherokee, then lying in the port of New York, dated 10th May, 1851, executed by the master of said schooner and the plaintiff, in which it was stipulated, among other things, that the said vessel was to take a cargo of cedar from the mouth of the Ocklawaha river, on the St. Johns river, to New York, and that 10 days were to be allowed to discharge and receive cargo at Ockla-waha river; and, in case the vessel should be detained, demurrage was to be paid at the rate of twenty dollars a day. The master also engaged to take and receive on board said vessel during the aforesaid voyage all such lawful goods and merchandize as the party of the second part, or his agents, might [think proper to ship. It was also understood that the vessel was to take out the char-terer's freight free.

Defendant's counsel objected to the item in the plain-tiffs's bill of particulars for amount paid for detention of the Cherokee in New York, as the charter party did not call for such demurrage. The Court overruled the objection to said item, and defendant excepted.

Plaintiff's counsel then offered Samuel B. Grice as a witness, who testified that he was acquainted with the

custom in New York as to delaying vessels. It is always the custom to pay for detention of vessels like this. That they do not authorize under a charter for return freight, outward freight. The witness also testified that it was and always had been the uniform custom of plaintiff to charge interest on amount of invoices from their date; that witness had at one time presented an account to defendant, containing a charge of interest in this manner, which was settled by defendant.

The record states, that "the plaintiff's counsel then offered in evidence the following account current, produced by defendant under notice, which was read to the jury as follows, to wit: This account current, dated 14th January, 1852, is not to be found on the file."

Plaintiff's counsel read in evidence an account current between the parties, produced at the trial by defendant under notice from plaintiff, commencing 7th June, 1851, with a balance, as per account rendered of $5,512 99 and interest upon it, and containing other items for advances and interest and commissions, crediting amount sales of lumber and interest, and ending 31st December, 1851, with a balance in favor of plaintiff of $5,513 37.

Plaintiff's counsel also read in evidence another account current, beginning January, 1852, with the balance of $5,513 37 from last account, and interest thereon, and containing other items for advances and interest and commissions, crediting amount sales of lumber and interest, and closing 30th October, 1852, with a balance in favor of plaintiff of $3,569 20.

The defendant's counsel read in evidence sundry accounts of sales of lumber made by plaintiff for his benefit, which are unnecessary to be inserted to elucidate the points involved in the decision of the Court.

The Court below charged the jury, " that in construing

the charter party in evidence, the Court was of opinion that the charter party did not require the vessel to take an outward cargo, and that in taking an outward cargo they did so as a matter of favor. If, therefore, the jury should believe from the evidence that said vessel was detained at the request of plaintiff to take an outward freight, being the goods ordered by the defendant through said plaintiff, and for which demurrage was charged and paid, and that said charge was made according to the usage and custom of commission merchants in the city of New York, then the plaintiff is entitled to recover such items thus paid."

"As to the interest on charges paid out by plaintiff and moneys paid by defendant on credit, the plaintiff is entitled to interest on such sums as you may allow as paid out by him from the date of the payment, and on credits the defendant is entitled to interest on the sums paid to plaintiff from the time they were paid." Also, "If you find from the evidence that the charges for interest on bills ordered are according to the usage and custom of commission merchants in the city of New York, and according to the usage and custom of the plaintiff, and that the plaintiff had no funds in his hands of the defendant to pay for said goods, then the plaintiff is entitled to recover the interest according to said usage or custom; but if you find that when said goods were ordered the said plaintiff had in his hands sufficient money of the defendant to pay for the same, then the plaintiff is not entitled to interest for advancing on such bills thus ordered."

The jury returned a verdict in favor of plaintiff for $2,217 04, and on the following day the defendant's counsel moved for a new trial, assigning among others as a ground for the motion, "that several of the accounts current and accounts sales rendered by the plaintiff to the de-

fendant, offered and read in evidence before the jury at the trial, were omitted, and not sent before the jury with the other papers, and they thereby had not all the data upon which to find a verdict."

The following statement in reference to this point is contained in the bill of exceptions, viz: "During the argument upon this motion for a new trial, it appeared by the statement of the counsel for defendant that the following papers were produced by them with the other papers at the trial under the general notice from plaintiff's counsel to produce all accounts rendered by the plaintiff to the defendant; that portions of them were never read to the jury and commented upon by the defendant's counsel, though not endorsed by the Court, read in evidence. The following four papers were presented on the motion for a new trial and endorsed by his honor Judge Forward as follows: This paper was presented on the motion for a new trial, and contended by counsel that it was in evidence and did not go to the jury, as it is not marked read in evidence, and the Court has remembrance of it, held it was not proper it should have gone to the jury."

The papers referred to in the foregoing statement are, a letter from plaintiff to defendant, dated 22d January, 1853, in which he states that he had forwarded to T. O. Holmes a duplicate of an account which he therein encloses to defendant, showing a balance in favor of plaintiff of $1,870 88. "It also," he says, "gives explanation of account of previous dates;"

Account sales live oak received per brigs Adelma and Sampson, showing net proceeds to credit of defendant of $1,870 34 of date of 29th October, 1852;

A corrected statement of account, signed by plaintiff, dated 30th October, 1852, making a balance in favor of plaintiff of $2,830 52. This statement charges error of

$383 51, doubly credited to defendant in former accounts, and credits defendant for a like error of $1,122 19;

An account commencing January 18th, 1851, for invoices of merchandise and cash advances, crediting defendant with sales of lumber, and ending 7th June, 1851, with a balance in favor of plaintiff of $5,515 99;

A statement appended of live oak on hand, showing a total of 4,035 7-12 feet;

Also a letter from plaintiff to defendant, dated 7th June, 1851, referring to the last mentioned account and statement of live oak on hand.

The Court overruled the motion for a new trial and defendant appealed.

*Felix Livingston* for appellant.

*Sanderson & Forward* for appellee.

BALTZELL, C. J., delivered the opinion of the Court.

This is a suit instituted by Grice, a commission merchant of the city of New York, against the defendant Pearson to recover the balance of an account for commissions, advances, &c., in the purchase of merchandize, sale of lumber, &c.

The errors complained of are to instructions given to the jury and the refusal of the Court below to award a new trial.

The first instruction assigned as erroneous is an item of $31, claimed to be due for detention of the Cherokee. The Court charged the jury, that if this vessel was " detained at request of plaintiff to take an outward freight, being the goods ordered by said Pearson through said plaintiff, and for which demurrage was charged and paid, and that said charge was made according to the usage and custom of merchants in the city of New York, plaintiff

was entitled to recover;" and further, that "the charter party did not require the vessel to take an *outward cargo*, and that in taking it they did it as *matter of favor.*"

The transportation from Florida to New York of a cargo of lumber was undoubtedly the principal object in contemplation of the parties, as the vessel was chartered "for a voyage from the Ocklawaha river, on the St. Johns river, to New York," yet there was an engagement "to take and receive on board the said vessel during the aforesaid voyage all such lawful *goods* and *merchandize* as said Pearson may think proper to ship; and, *further, it was also understood the vessel is to take out the charterer's freight free.*" She was, at the date of the charter party, in the port of New York, and did take out freight of defendant to Florida, for the detention of taking which on board this charge of $31 was made. We do not concur in the opinion that the taking such cargo was matter of favor, but, on the contrary, are of opinion that it was expressly provided for by the agreement recited. Being the duty and obligation of the vessel to take such cargo, it follows that there was no rightful charge for the time consumed in taking it on board. Had there been a detention beyond this, through some default of the defendant, then indeed there might have been ground for claim to remuneration. But, nothing of this kind is either alleged or proved, nor do we think that the opinion of a witness that there was a custom in the city of New York to make a charge under such circumstances entitled to any weight. There was just as much reason for charging for the freight taken on board and conveyed to Florida, yet there is none for this, showing the full understanding of the parties as to their liability and obligation. This instruction, then, we think erroneous, and the jury should have been informed that a detention of the vessel to take an outward freight of de-

fendant was not a fair charge by the agreement, and plaintiff was not entitled to the sum paid therefor.

The instructions as to interest form another subject of complaint. They are, "that plaintiff is entitled to such sums as you may allow to be paid out by him from the date of the payment, and on credits the defendant is entitled to interest on the sums paid to the plaintiff from the time they were paid."

Again, "if you find from the evidence that the charges for interest on bills ordered are according to the usage and custom of commission merchants in the city of New York, and according to the usage and custom of the plaintiff, and that the plaintiff had no funds in his hands of the defendant to pay for the said goods, then the plaintiff is entitled to recover interest according to the said usage and custom; but if when the goods were ordered plaintiff had in his hands sufficient money to pay the same, then plaintiff is not entitled to interest for such advances."

We do not regard the first instruction so objectionable as it has been presented in argument by counsel for defendant. In the case of Reid's adm'r vs. The Rensalaer Glass Factory, the Court ordered "the calculation to be made by allowing interest on the receipt and advances of cash from the time of making and receiving the same."—3 Cowen, 438.

This was a case of agency in which there was a receipt and disbursement of sums amounting to upwards of $100,000, as well on the debit as the credit side. It is a leading case on the subject of interest, was argued with masterly ability in both the Supreme Court and Court of Errors of New York, and the opinions of the Court present an able examination and analysis of the entire subject and of all the authorities, English and American.— 3 Cowen, 394; 5 *Ibid.*, 558.

The second instruction makes an exception in favor of defendant somewhat inconsistent with the rules established by the first, and greatly in favor of defendant, and which should relieve them both from all objection on the score of prejudice to him. We do not regard the case of Dorman and Hart, 2 Florida, 447, as having an application to this case. That was the case of payments on a note of hand, the rule affecting which is settled by a series of decisions on its own foundation. Whilst of this opinion, we perceive a difficulty in the application of the instructions to the facts, the evidence in the cause. In cases of this kind, the accounts furnished to a party, if received without objection and acquiesced in, become a stated account, are evidence in favor of a creditor and regarded as conclusive, unless some fraud, mistake, omission or inaccuracy is shown. In this case, an account commencing 7th June, 1851, with a balance of former account of $5,512 99 and interest upon it, and other items giving a balance of $5,513 37 to the 31st December of that year, and another account, with a like balance of $5,513 37, with interest upon it, and other items, and closing with a balance of $3,569 20 on the 30th of October, 1852, together with other testimony, as well on the part of plaintiff as defendant, were given in evidence to the jury. Now, an instruction to allow interest on sums paid and received from date of payment, would seem to be at variance with a settlement in which interest has been calculated on the balances and not on each item. It is obvious that the instructions given were predicated upon the bill of particulars, and not upon the accounts which were in evidence.

Concluding to reverse the case, we yet do not feel at liberty to declare what should be the true rule as to interest in the event of a farther hearing. This will be more appropriately done when the entire testimony is before us.

The reason of this will be obvious in noticing the application made for a new trial. The following statement, as to this point, is in the bill of exceptions: "During the argument upon this motion for a new trial, it appeared by the statement of the counsel for defendant that the following papers were produced by them, with the other papers at the trial, under the general notice from plaintiff's counsel to produce all accounts rendered by the plaintiff to defendant; that portions of them were *never* read to the jury and commented upon by defendant's counsel, though not endorsed by the Court, read in evidence. The following four papers were presented on the motion for a new trial, and endorsed by his honor Judge Forward as follows: 'This paper was presented on the motion for a new trial, and contended by counsel that it was in evidence and did *not go to* the jury, as it is not marked read in evidence, and the Court has [no] remembrance of it, held it was not proper it should have gone to the jury.'"

It is difficult to arrive at the meaning of this very confused and obviously incoherent statement. Perhaps we may infer that the counsel insisted that the papers alluded to were read in evidence, whilst the judge had no remembrance of it. If this be so, we are clearly of opinion that means should have been taken by the judge to refresh his memory by ascertaining the fact asserted, whether the papers were in fact either read in evidence or not read. The important rights and interests of the parties should not be made to depend upon mere remembrance, whilst there is a possibility of attaining the truth by other means. The statement, on its face, shows either mistake or misconception. The papers alluded to are, a letter of Grice, the plaintiff, to Pearson, dated 22d January, 1853, stating that he "had forwarded a duplicate account showing a balance in his favor of $1,870." "It also," he says, "gives

explanation of account of previous dates;" account of sales live oak of brigs Adelma and Sampson, giving net proceeds, $1,870 34, of the date of 29th October, 1852; a *corrected statement*, dated October 30th, 1852, making balance in favor of Grice of that date $2,830 52, and admitting error to his own prejudice for double credit of $383. 51, and a like error, to injury of defendant, for like mistake of $1,122 19; an account commencing January, 1851, and ending 7th of June, showing a balance of $5,515 99 in favor of plaintiff, and account of live oak and a letter dated 7th June, 1851, from Grice to Pearson. That these papers should have gone to the jury, that they were important, material, we would almost say indispensable, to a true understanding and rightful disposition of the case, we think is manifest upon the slightest inspection. The account of January and June, 1851, the commencement of the transaction, should have been given in evidence as part of the plaintiff's case, and was necessary to its proper comprehension. The admissions of errors by plaintiff in the corrected account of October 30th, 1852, by which the original of the same date, giving a balance of $3,569. 20, read as evidence by plaintiff, was reduced to $2,830 52, and again, the letter of the 22d January, 1853, by which the same account was admitted *to be farther reduced*, through mistakes, &c., to $1,870 88, exhibit causes for their production on the trial too palpable to require argument in their support. If omitted through inadvertence, accident or mistake, there is no reason for refusing the application, so as to have their production on another trial. Counsel seem to have been so confident of their having been used upon the trial, and of their having been read in evidence, that, in the application for a new trial, they state " that several of the accounts current and account sales rendered by plaintiff to the defendant *offered* and read in

evidence to the jury at the trial, were not sent before the jury with the other papers." If not read, excuse would have been made for the omission. Under such circumstances, we feel no hesitancy in saying that a new trial should have been awarded.

Whilst we have treated these papers as in the record, on the motion for a new trial, for very obvious reasons we have not been permitted to regard them as a part of the record for purpose of reversal, or to predicate instructions upon them with a view to a new trial.

Under the circumstances, we have concluded it most appropriate not to anticipate the action that may be taken in the Court below, or even to assume that these accounts and letters will be read in evidence, and, on this account, do not give instructions on the subject of interest. The effect which these errors may have upon the allowance of interest, indeed the effect of the statement of interest in the accounts, has not been argued before us, so as to enable us to consider it with due regard to the rights of the parties.

It is proper to say, that the record states that "the plaintiff's counsel then offered in evidence the following account current, produced by defendant under notice, which was read to the jury as follows: This account current, dated 14th January, 1852, is not to be found on the file."

We have to notice, not only this omission to take care of the papers on file, but are pained to state that the bundle sent us as a record or copy of the proceedings in the Court below, is very far from what the law requires from the Clerk in the performance of such a duty. But for the aid of our own Clerk, in giving us an entirely new copy, it would have been nearly impossible, from the very

29

poor and imperfect specimen sent us, to make out the action of the Court below. If the paper had been seen in time, it would have been rejected, as no such record will be placed or tolerated among our files.

The judgment of the Circuit Court will be reversed and set aside and the cause remanded for a new trial, and other proceedings to be had in the case not inconsistent with this opinion.